******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* YERO S. WALKER
## (AC 46936)

Cradle, C. J., and Wilson and Prescott, Js.

*Syllabus*

Convicted of the crimes of carrying a pistol without a permit and criminal possession of a pistol, and of being a persistent felony offender, the defendant appealed to this court. The defendant claimed, inter alia, that the trial court had violated his constitutional right to be present at all critical stages of the prosecution when it allowed him to be tried and sentenced for being a persistent felony offender after he failed to appear in court for both the trial on that charge and his sentencing. *Held*:

The trial court violated the defendant's right to be present at trial and sentencing with respect to part B of the state's substitute information, which charged the defendant with being a persistent felony offender, when the proceedings concerning that charge were conducted in the defendant's absence, as the defendant had never been notified of the contents of part B of the substitute information, and, therefore, any waiver by the defendant of the right to be present during those proceedings could not have been knowing and intelligent.

Because the state failed to demonstrate that this constitutional violation was harmless beyond a reasonable doubt, this court reversed the defendant's conviction of being a persistent felony offender and remanded the case for resentencing.

The defendant could not prevail on his claim that the trial court had violated his right to counsel of his choice when the court denied his request for a continuance, immediately prior to the commencement of jury selection, for the purpose of replacing his court-appointed counsel with private counsel, as the defendant was afforded the opportunity to retain substitute counsel almost three years prior to the commencement of jury selection, when he first raised the issue of replacing his court-appointed counsel with the trial court, but failed to do so, and at no point did the defendant assert a substantial complaint concerning his court-appointed counsel's representation of him.

Argued March 27—officially released June 12, 2025*

*Procedural History*

Two part substitute information charging the defen- dant, in the first part, with the crimes of carrying a pistol

---

* June 12, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

without a permit and criminal possession of a pistol, and, in the second part, with being a persistent felony offender, brought to the judicial district of Waterbury, where the charge of criminal possession of a pistol was tried to the court, *Schuman, J.*; finding of guilty; thereafter, the charge of carrying a pistol without a permit and the second part of the information were tried to the jury before *Schuman, J.*; verdict of guilty; subsequently, the court, *Schuman, J.*, rendered judgment in accordance with the finding of guilty and the verdict, and the defendant appealed to this court. *Reversed in part*; *further proceedings.*

*Alice Osedach Powers*, assigned counsel, for the appellant (defendant).

*Raynald A. Carre*, deputy assistant state's attorney, with whom were *Maureen Platt*, state's attorney, and *Elena Palermo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, C. J. The defendant, Yero S. Walker, appeals from the judgment of conviction, rendered following a jury trial, of carrying a pistol without a permit in violation of General Statutes (Rev. to 2017) § 29-35 (a)[1] and being a persistent felony offender in violation of General Statutes § 53a-40 (g), and rendered after a trial to the court, of criminal possession of a pistol in violation of General Statutes (Rev. to 2017) § 53a-217c (a) (1).[2] On appeal, the defendant claims that the trial court violated his constitutional rights (1) to be present at all critical stages of his prosecution when it determined that he waived that right and tried and sentenced him in

---

[1] Hereinafter, all references to § 29-35 are to the 2017 revision.

[2] Hereinafter, all references to § 53a-217c are to the 2017 revision.

absentia, and (2) to counsel of his choice when it denied his motion for a continuance to retain substitute counsel. We disagree with the defendant's claim that his constitutional right to counsel was violated. We agree, however, that the trial court improperly determined that he had waived his right to be present at trial and sentencing as to the charge of being a persistent felony offender[3] and therefore reverse the judgment as to that charge only and remand the case for resentencing on the remaining two convictions.

The following facts and procedural history are relevant to the defendant's claims on appeal. On October 7, 2018, the defendant was arrested in connection with an incident in which shots were fired in a parking lot in Waterbury. The state initially charged the defendant with illegal transfer/purchase of a pistol in violation of General Statutes (Rev. to 2017) § 29-33; carrying a pistol without a permit in violation of § 29-35 (a); illegal possession of a large magazine in violation of General Statutes (Rev. to 2017) § 53-202w (c) (1); tampering with physical evidence in violation of General Statutes § 53a-155 (a); interfering with an officer in violation of General Statutes (Rev. to 2017) § 53a-167a (a); stealing a firearm in violation of General Statutes § 53a-212 (a); and criminal possession of a pistol in violation of § 53a-217c (a) (1).

On October 30, 2018, the defendant appeared in court, and the court appointed Assistant Public Defender John Cizik to represent him. At that time, Cizik entered pro forma not guilty pleas to the charges on behalf of the defendant.

---

[3] In light of the relief that we afford the defendant with respect to this claim, we need not address the defendant's separate claim that his constitutional right to due process was violated when the trial court failed to inform him of the contents of the state's part B information, in which he was charged with being a persistent felony offender.

The trial commenced on April 27, 2022. Prior to proceeding with jury selection, the court noted that the state had filed a substitute information charging the defendant with carrying a pistol without a permit in violation of § 29-35 (a) and criminal possession of a pistol in violation of § 53a-217c (a) (1). The court, *Schuman, J.*, confirmed with Cizik at that time the defendant's not guilty plea on both charges, and his election to be tried before a jury on the charge of carrying a pistol without a permit and by the court on the charge of criminal possession of a pistol.

Also on April 27, 2022, the state filed a part B information charging the defendant with being a persistent felony offender in violation of § 53a-40 (g) and seeking enhanced penalties on the charges of carrying a pistol without a permit, criminal possession of a pistol and "criminal possession of ammunition."[4] There was no mention on the record of the part B information. On May 25, 2022, the state filed an amended part B information seeking enhanced penalties only on the charge of criminal possession of a pistol.

The jury found the defendant guilty of carrying a pistol without a permit and the court found the defendant guilty of criminal possession of a pistol. The jury also later found the defendant guilty of being a persistent felony offender.[5] Thereafter, the court sentenced the defendant to a total effective sentence of fifteen years of incarceration, of which three years were mandatory, and five years of special parole. This appeal followed. Additional facts and procedural history will be set forth as necessary.

---

[4] The record does not reflect that the defendant was charged with criminal possession of ammunition in this case.

[5] Although the state had given notice on April 25, 2022, of its intent to seek sentence enhancement pursuant to General Statutes § 53-202k for the commission of a class A, B or C felony with a firearm, it ultimately did not pursue enhancement of the defendant's sentence pursuant to that statute.

## I

The defendant first claims that the court violated his constitutional right to be present at all critical stages of his prosecution when it tried and sentenced him in absentia. Specifically, the defendant claims that the court improperly determined that he had waived his right to be present during trial and sentencing on the state's part B information charging him with being a persistent felony offender because he had never been notified of the contents of the part B information, and, consequently, any waiver could not have been knowing and intelligent. We agree.

The following additional procedural history is relevant to this claim. Following jury selection, at which the defendant was present with counsel, evidence was scheduled to begin on May 24, 2022. On the morning of May 24, the defendant did not appear in court, which prompted the court to issue a capias to have him brought to court. The court recessed until 2:30 p.m. When court reconvened, the state indicated that neither its inspector nor other law enforcement officers had been able to locate the defendant. Defense counsel indicated that he also had been unable to reach the defendant. In response to the state's argument that trial should proceed in the defendant's absence, the court first recounted: "We started jury selection several weeks ago, and we did pick two jurors, and then—and on one of those days, the defendant asked to leave early to pick his daughter up at school, and I granted permission.

"But then I believe, on the second day of jury selection, the defendant informed us that he was sick and supplied a note indicating he would not be available to return to work until Saturday of that week. That caused us to suspend jury selection and reschedule the trial because we had planned on completing jury selection that week and trying the case the next week given

the tight trial schedule that I had and also particularly [the state].

"We then resumed jury selection last week and, on one day of jury selection, the defendant was late. I told him he's required to be here at the beginning of court. And we completed jury selection last week. At the conclusion of jury selection, I did tell the defendant that a trial would start Tuesday and he was required to be here from 10 a.m. to 5 p.m. on the days of trial this week.

"So, I believe the defendant has had full notice of the trial. It's disturbing, obviously, that he is not here or [that he did not call] anyone including his lawyer to inform us of any reason why he can't be here."

The court then explained: "[U]nder this circumstance, we look at Practice Book § 44-8 (2), which provides that the defendant must be present at the trial and at the sentencing hearing, but if the defendant will be represented by counsel at the trial or sentencing hearing, the judicial authority may direct that the trial or part thereof or the sentencing hearing be conducted in the defendant's absence if the judicial authority determines that the defendant waived the right to be present. . . . [A]t this point, I just want to address the waiver issue. . . . I am going to find that the defendant has waived his right to be present. The case law supports this finding . . . [in that it] states [that], if a defendant deliberately leaves the courtroom after his trial has begun, he forfeits his right to be present at trial. [Our case law also] . . . states [that] a waiver of the right to be present at trial may be manifested by . . . an intelligent and intentional action. It does not have to be expressed but may consist of acts or conduct from which it may be implied, and I find that the defendant's failure to be here, after he was informed that he was required to be here and numerous times told to be here on time, his failure to be here without calling and giving

us any indication as to a reason why he couldn't be here after at least three hours of [a] police search for him without finding him [at] the addresses where he's likely to be found, not returning or answering or returning phone calls, does constitute a waiver of the right to be present under § 44-8 (2)."

After defense counsel voiced his concern that proceeding without the defendant would violate his constitutional rights, the court explained: "What I'm going to try to do is balance the competing interests here. [The] Practice Book does provide that the court may direct that the trial or a part thereof be conducted in the defendant's absence. I'm going to order that a part of the trial be conducted in the defendant's absence this afternoon to accommodate the two state's witnesses who are not available for the rest of the trial period, which was really today and tomorrow.

"In doing so, I'm considering a number of factors. One, of course, is their availability. Two is a capias was issued over three hours ago, and the defendant has not been located, so there's been at least a reasonable opportunity to find the defendant. He has not been located, and he has not called.

"And I will instruct the jur[ors] that they should draw no unfavorable inference from the defendant's absence and that his absence should play no role in their verdict, and they should not speculate as to the reasons why the defendant is not here.

"On the other hand, in the hopes that the defendant can be found overnight, I don't want to go ahead with the rest of the trial until tomorrow. Those witnesses are available. I think it's reasonable to wait until tomorrow at 10 a.m. to see whether the defendant does appear or can be found before we go ahead with any more of the trial in absentia.

"I would also add that at this point, rescheduling the trial is not a meaningful option. We have already rescheduled the trial once because of the defendant's absence, and, at this time, the balance weighs in favor of the state and the court's interest in moving ahead with this case. I will note that, next week, both [the state's attorney] and [the court] start a murder case that we project will take five weeks for jury selection and evidence, and there's a speedy trial motion in that case. So that has to be heard. I think it would be inconvenient and unfair to the state to reschedule this case a third time. The state has prepared its witnesses each time, and, in all fairness, the state has a right to be heard here. And I think it would be prejudic[ial] if we rescheduled it again.

"I think hearing the testimony of the witnesses [who will] not be available in the defendant's absence this afternoon and then deferring the rest of the trial until tomorrow morning when, hopefully, the defendant will be here, strikes the appropriate balance giving all the competing considerations. [Defense counsel], of course, will be here for all of this and certainly enjoys full right of cross-examination of these witnesses." The jury was sworn, and trial began in the defendant's absence.

The defendant again failed to appear in court on the next day. The court explained: "Numerous efforts have been made to bring him here for his benefit, but he's chosen not to be here. I construe that as a continuing waiver of his right to be here, and, since the state has witnesses who are ready to testify, we have a jury, we started the trial. We already rescheduled this trial, and, for all the reasons I stated yesterday, I concluded that we should continue the trial in absentia." Trial again proceeded in the defendant's absence.

On that same day, after closing arguments, the court indicated to counsel that it had found the defendant

guilty of criminal possession of a pistol, and, "based on that decision, we will ask the jury, after it's rendered its verdict on carrying a pistol without a permit, to come back and hear evidence on . . . part B . . . of the information charging [him] with [being a] persistent felony offender." The jury thereafter found the defendant guilty of carrying a pistol without a permit, and the court instructed the jury to return the following day to consider the state's part B information.

The defendant again did not appear in court the next day. At that time, the court confirmed with defense counsel that "the defendant enters a not guilty plea and jury election on the second part of the information . . . ." After the jury found the defendant guilty of being a persistent felony offender, the court set a sentencing date of August 24, 2022.

On August 24, 2022, the defendant failed to appear in court for sentencing. The court again found that he waived his right to be present and proceeded to sentence him in absentia.[6]

On appeal, the defendant claims that his constitutional right to be present at his trial and sentencing was violated in that the court improperly determined that he waived that right because he had not been apprised of the part B information. Although defense counsel objected to proceeding with trial in the defendant's absence, counsel did not assert the specific claim that the defendant could not have waived his constitutional right to be present because he did not have notice of the

---

[6] The court reasoned: "[T]he defendant was here for . . . the beginning of jury selection and was well aware, as far as I can tell, that this trial was going forward. And we did go forward in the defendant's absence. The defendant can't reasonably assume that the case is going to go away merely because he doesn't appear in court, or that we will just wait until he gets back. So, I view the defendant's failure to appear today as an intentional waiver of his right to appear and therefore believe that we should conduct the sentencing in absentia."

part B information. Accordingly, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

"Pursuant to *Golding*, a [defendant] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [defendant] of a fair trial; and (4) if subject to harmless error analysis, the [state] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Emphasis in original; internal quotation marks omitted.) *State* v. *Daniels*, 228 Conn. App. 321, 342, 324 A.3d 820, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024).

The state does not dispute, and we conclude, that the record is adequate to review the defendant's claim and that the claim is of constitutional magnitude. The first two prongs of *Golding* therefore have been satisfied. The state challenges the defendant's assertion that a constitutional violation exists because he waived his right to be present at trial and sentencing, and, thus, argues that the defendant's claim fails under the third prong of *Golding*. We disagree.

"It has long been settled that an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial. . . . It is also well settled that under the due process clauses of the fifth and fourteenth amendments a defendant must be allowed to be present

at his trial to the extent that a fair and just hearing would be thwarted by his absence. . . . Nevertheless, the defendant's presence is not required when the right is waived. Waiver in this context is addressed both in our rules of practice and in our case law. . . .

"Pursuant to Practice Book § 44-8: The defendant must be present at the trial and at the sentencing hearing, but, if the defendant will be represented by counsel at the trial or sentencing hearing, the judicial authority may: (1) Excuse the defendant from being present at the trial or a part thereof or the sentencing hearing if the defendant waives the right to be present; (2) Direct that the trial or a part thereof or the sentencing hearing be conducted in the defendant's absence if the judicial authority determines that the defendant waived the right to be present; or (3) Direct that the trial or a part thereof be conducted in the absence of the defendant if the judicial authority has justifiably excluded the defendant from the courtroom because of his or her disruptive conduct . . . . Consequently, the trial court is authorized to direct the trial or a part thereof to be conducted in the absence of the defendant who is represented by counsel if the court determines that he has waived his right to be present. . . .

"Waiver is the intentional relinquishment of a known right. Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . Moreover, whether there has been an intelligent and competent waiver of the right to presence must depend, in each case, upon the particular facts and circumstances surrounding that case. . . .

"The United States Supreme Court has stated that, where the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial,

but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present. . . . *Taylor* v. *United States*, 414 U.S. 17, 19, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973)." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 197 Conn. App. 257, 262–63, 231 A.3d 266, cert. denied, 335 Conn. 960, 239 A.3d 1215 (2020).[7]

For most purposes, commencement of a jury trial is generally defined as the commencement of the voir dire examination of potential jurors. See, e.g., *State* v. *Hargett*, 343 Conn. 604, 637, 275 A.3d 601 (2022). Here, the defendant was out on bond and was present in court with counsel throughout jury selection. When jury selection was complete, the court specifically addressed the defendant to ensure that he understood that he needed to be present for the remainder of trial the following week. The defendant nevertheless inexplicably failed to appear. On that basis, the defendant does not challenge the court's determination that he waived his right to be present for trial and sentencing on the charges of carrying a pistol without a permit and criminal possession of a pistol; nor could he reasonably have done so. The defendant was aware of those charges and the potential sentences associated with the charged offenses. Defense counsel indicated in court that he had discussed those charges with the defendant and

---

[7] Of course, cases in which a defendant is in custody or present at trial and then affirmatively expresses his decision to absent himself from trial are different from those, such as the present case, in which the defendant, without explanation, simply does not appear for trial. "The trial court is not required to preemptively notify a defendant that his case will proceed in his absence without any indication that he would be absent at some later time. This requirement would give the defendant the power to control the court by unilaterally prevent[ing] his case from going forward, allowing him to defy the law with impunity, and in the process, to paralyze the [criminal] proceedings." (Internal quotation marks omitted.) *State* v. *Hernandez*, supra, 197 Conn. App. 268.

that the defendant was aware of them and the attendant liability if convicted of them. The record does not reflect, however, that the defendant was ever made aware of the existence of the part B information or its contents, or the potential sentencing ramifications if convicted of the charge set forth therein.[8]

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . [is a principle] of constitutional law [that is] inveterate and sacrosanct." (Citations omitted; internal quotation marks omitted.) *State* v. *Laracuente*, 205 Conn. 515, 518, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988).

Consistent with this fundamental constitutional mandate, Practice Book § 37-11 provides: "Prior to the time the defendant enters a guilty plea, or, if the defendant pleads not guilty, prior to the commencement of trial, the court shall notify the defendant of the contents of

---

[8] General Statutes § 53a-40 provides in relevant part: "(g) A persistent felony offender is a person who (1) stands convicted of a felony other than a class D or E felony, and (2) has been, at separate times prior to the commission of the present felony, twice convicted of a felony other than a class D or E felony, if such felonies were committed during the ten years prior to the commission of the present felony.

\* \* \*

"(o) When any person has been found to be a persistent felony offender, the court, in lieu of imposing the sentence authorized by section 53a-35a for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony; provided the sentence imposed may not be less than three years, and provided further three years of the sentence so imposed may not be suspended or reduced by the court. . . ."

the second part of the information. The clerk shall enter on the docket the time and place of the giving of such notification and, where necessary, shall include entry thereof in the judgment file."

Here, the record reflects that the state first filed a part B information on April 27, 2022. The state filed its substitute information on that same day. Although the court addressed the substitute information with defense counsel, there was no mention of the part B information.[9] The record does not reflect that the court had ever notified the defendant of the contents of the part B information.[10] There is likewise no indication in the court file that the defendant was so advised. In fact, we cannot glean from the record that the defendant ever had any knowledge of the contents of the part B information and what the state was required to prove in order to determine that he is a persistent felony offender and the penalty that he faced. Rather, after the court announced its finding of guilt on the criminal possession charge, it asked defense counsel if the defendant was pleading not guilty with respect to the part B

[9] Although the court advised the defendant of the state's intention to seek sentence enhancement under § 53-202k, that advisement cannot supplant the requirement, set forth in Practice Book § 37-11, that the defendant be advised of the contents of the part B information, which required different proof and provided for a different sentence enhancement than a sentence enhancement under § 53-202k.

[10] After the court advised the defendant of the state's intention to seek sentence enhancement under § 53-202k, the court noted that "there's still an outstanding issue as to persistent felony offender enhancement. And I'm not going to raise that now, unless you want me to, but, rather, wait to see what the verdict is and then see whether we should have a separate proceeding before the jury, the court, or whether there would be a plea or what on persistent serious felony offender, but I don't think we need to address that right now." This was the court's only reference to the part B information on the record. Based on the court's comment, it intended to advise the defendant of the part B information after it made its finding of guilt as to the criminal possession of a pistol charge. Unfortunately, that intent was thwarted by the defendant's absence at trial, which could not reasonably have been anticipated by the court.

information and whether he was electing a jury trial on the charge contained therein. In the absence of the defendant, defense counsel responded affirmatively.[11] The contents of the part B information were not read in court until they were read to the jury at the commencement of its consideration of it.

Because the defendant was never apprised of the part B information, he could not have intelligently and knowingly waived any rights associated with it. We therefore conclude that the court improperly determined that he did so. In the absence of a valid waiver, the defendant's constitutional right to be present at trial and sentencing, as to the part B information only, was violated when the proceedings related to that charge went forward in his absence.

Having determined that a constitutional violation exists, we turn to the fourth prong of *Golding* and consider whether the state has demonstrated that that violation was harmless beyond a reasonable doubt. "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional [violation] was harmless beyond a reasonable doubt. . . . In evaluating whether a denial of presence [from a critical stage of the proceedings] is harmless, [w]e first determine whether the defendant's presence . . . would have contributed to his ability to defend against the charges. . . . We then consider the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Davis*, 186 Conn. App. 385, 395, 199 A.3d 1149 (2018), cert. denied, 330 Conn. 965, 199 A.3d 1081 (2019). "The state bears the burden

---

[11] We note that Practice Book § 37-7 provides: "Upon being read the charges against him or her contained in the information or complaint, the defendant shall enter a plea of not guilty, guilty, or nolo contendere." Here, the defendant was not present when Cizik entered a plea of not guilty on behalf of the defendant with respect to the part B information and elected a jury trial thereon.

of demonstrating that the constitutional [violation] was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Alexis*, 194 Conn. App. 162, 176, 220 A.3d 38, cert. denied, 334 Conn. 904, 219 A.3d 800 (2019). The defendant argues that, because he was tried and sentenced in absentia, he was not able to assist his counsel in his own defense at trial or to assist counsel in arguing mitigation of his punishment at sentencing. This prong merits little discussion in that the state has failed to address, let alone demonstrate, harmlessness.

On the basis of the foregoing, we conclude that the defendant's constitutional right to be present at trial and sentencing on the part B information was violated and that the judgment must be reversed as to the charge of being a persistent felony offender.

II

The defendant also argues that his right to counsel of his choice was violated when the court denied his request for a continuance for the purpose of retaining private counsel. We are not persuaded.

The following additional procedural history is relevant to this claim. The defendant filed a letter dated June 18, 2019, wherein he asked that Cizik be removed as his attorney and replaced by a special public defender on the ground that Cizik's representation of him had demonstrated a lack of interest for his "well-being . . . ." In his letter, the defendant complained that "Cizik ha[d] told me that he knows what happened in result to my charges and that I am guilty which is untrue, and I also find [it] to be unfair, as if I have no say in this matter." The defendant indicated in his letter that "[t]ime is of the essence for me as my case is on the trial list with a possibility of being called at any time . . . ."

On July 17, 2019, the court, *Fasano, J.*, held a hearing to address the defendant's request for new counsel. The defendant told the court that he had an issue with Cizik's advice to plead guilty to the charges against him. The court explained that the decision to plead guilty would "never be up to [Cizik]," and, in fact, Cizik had rejected the court's earlier plea offer, and the case was on the trial list. The court told the defendant, "[i]f you need another attorney, you would hire one yourself. I can't just keep giving you attorneys out of that office unless I thought [that Cizik] was doing something wrong or that he was not appropriate under the circumstances. And he's doing all he can." The defendant complained that Cizik was denying his requests for copies of his file, specifically, discovery materials in his file. When the court informed the defendant that he had only the right to review those materials, but not the right to have copies of them, he complained that he had not even been allowed to review them. Cizik refuted that claim. The court again told the defendant, "[i]f you want to bring in another attorney, you have to do that on your own." The defendant indicated that he would have to try to talk to his family about doing so, and the court responded, "[y]es, you can do that. . . . The matter's on the trial list. It's not going to come up right away, so you have time."

On April 27, 2022, when the parties initially were scheduled to commence jury selection, the defendant again raised the issue of "firing [Cizik] and hiring new counsel." The defendant expressed disagreement with Cizik's representation that he was prepared for trial. The court indicated that it was not inclined to continue cases on the eve of trial, that this case began in 2018, and that the defendant's effort to replace Cizik should have been raised a long time ago. The defendant explained that he tried to have Cizik removed from his case previously but that he had only been out on bond

for six months and was now working and trying to secure the money to retain private counsel. After the court indicated that potential jurors had been summoned, both attorneys were present and prepared to begin trial, and the "case is old" and had been "carefully fit into [the court's] trial schedule," the court referred the defendant's request for time to hire new counsel to Judge Iannotti.[12]

Judge Iannotti began by recounting: "Judge Schuman brought to my attention that [the defendant] indicated that he wanted to hire a new lawyer. The case has been called into trial. The case is at least two years old. . . . It might be more than that . . . [possibly] four years old. He's been out on bond for a considerable period of time. He's had plenty of time to consult with other attorneys. It is improper to ask for a new counsel when your case is ready to face jury selection. You have the right to hire anybody you want, and, certainly, I'm not preventing him from doing that, of course. He can hire anybody he wants, but it has to be today, and they have to come in and say they're ready to start trying the case. The case is not going to be delayed after four years because, after four years, he indicates that he now wants new counsel, of which I can't understand possibly why, when you have [Attorney] Cizik representing you. So there's not going to be a continuance of this case . . . for new counsel at this time."

The defendant asserted that he was unaware that his case had been scheduled for trial, to which the court responded: "Well, I would think, sir, that that's not correct. The case was placed on the firm jury [list] with you present. The offer was rejected with you present. When the case is placed on [the] firm jury [list], that means it's ready to go. That means you have rejected

---

[12] The proceeding before Judge Iannotti occurred on the same day in a different courtroom.

the offer, that you don't want a plea, and that you're telling the court, sir, that you want a trial. The only thing I did was give you everything that you wanted." When the defendant persisted in claiming that Cizik did not notify him that the case had been scheduled for trial, the court told the defendant that it was "more than reasonably confident that [Cizik] explained everything to [him]" and sent the case back to Judge Schuman to proceed with jury selection.[13]

"It is well established that [a] defendant is not entitled to the appointment of a different public defender to represent him without a valid and sufficient reason. . . . Nor can a defendant compel the state to engage counsel of his own choice by arbitrarily refusing the services of a qualified public defender. . . . When reviewing the adequacy of a trial court's inquiries into a defendant's request for new counsel, an appellate court may reverse the trial court only for an abuse of discretion. . . . [Of course, a] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of that inquiry, however, lies within the discretion of the trial court. . . . When a defendant's assertions fall short of a seemingly substantial complaint, we have held that the trial court need not inquire into the reasons underlying the defendant's dissatisfaction with his attorney. . . .

---

[13] Cizik informed the court: "Your Honor, I believe we had a discussion in chambers last Wednesday about cases that were being called in for trial. [The defendant's] was one of them. My office contacted him on Wednesday and told him that his case was down to schedule his trial on Thursday. [The defendant] came here on Thursday. I spoke to him, and I told him that we—there were three trials that were brought in. The only question was which was going to go in which order. After that decision was made, I met with [the defendant] in my office for a considerable period of time [and] told him the case is starting jury selection today. [I] explained to him what the jury selection process was. [I] made an appointment with [the defendant] to meet with him and discuss his trial further on Monday afternoon, which, later Thursday, he cancelled."

"[An appellate court] must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial. . . . In evaluating whether the trial court abused its discretion in denying [the] defendant's motion for substitution of counsel, [an appellate court] should consider the following factors: [t]he timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." (Citation omitted; internal quotation marks omitted.) *State* v. *Goode*, 211 Conn. App. 465, 472–73, 272 A.3d 748, cert. denied, 343 Conn. 925, 275 A.3d 1212 (2022).

Here, when the defendant asked for substitute counsel in 2019, the court advised him that he could hire private counsel, and he indicated that he would talk to his family about doing so. In his 2019 letter to the court asking that new counsel be appointed to represent him, the defendant represented that "[t]ime is of the essence . . . as my case is on the trial list with a possibility of being called at any time . . . ." The defendant nevertheless did not attempt to retain new counsel until almost three years later, after he posted bond to effect his release from prison while awaiting trial. The court afforded the defendant ample opportunity to argue for new counsel and fully express his complaints regarding Cizik's representation of him, but at no time, either in 2019 or upon his renewal of his request for new counsel in 2022, did the defendant assert a substantial complaint regarding that representation. Indeed, the defendant did not provide any complaint of Cizik's representation of him when he renewed his request on the day that jury selection was scheduled to begin. We therefore conclude that the trial court did not err in denying the defendant's request for additional time to retain private

counsel. Accordingly, the defendant's claim that his constitutional right to counsel of his choice was violated fails.

The judgment is reversed only with respect to the defendant's conviction of being a persistent felony offender and the case is remanded for resentencing on the remaining convictions; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.